United States District Court
Southern District Of New York

---------------------------------------------------------------------x

Cecil Waithe

                                     Plaintiff,

                -v-                      **Amended Complaint**

                                          **Jury Demand**

The City Of New York, William A. Bratton,
as NYPD Police Commissioner, being sued individually
and in his official capacity as employee of defendant
The City Of New York,

                                    Defendants.

-----------------------------------------------------------------------------x

       The plaintiff Cecil Waithe by his attorney William T. Martin, Esq., as and for his Complaint against defendant The City Of New York, respectfully set forth and allege that:

## Introduction

       This is an action for equitable relief and money damages on behalf of the plaintiff Cecil Waithe, (hereinafter referred to as "WAITHE") who was and is being deprived of his statutory rights as an employee as result of the defendant The City Of New York discriminatory conduct.

## Jurisdiction And Venue

       1. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166); 42 U.S.C. 1981, 1983,1985.

       2. Title 28 U.S.C. §§ 1331, 1343 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166.

       3. Title 28 U.S.C § 2202 to secure protection of and to redress deprivation of

rights secured by:

4. The pendent jurisdiction of the federal district court is invoked pursuant to 28 U.S.C. 1367 with respect to the plaintiff's claims under: a) New York State Executive Law - Human Rights: §§ 290 to 297;  b) New York City Administrative Code § 8-107;

5. The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State law pursuant to 28 U.S.C. 1367:  to wit; a) Negligence;  b) Negligent hiring, c ) Negligent supervision, d) Infliction of Emotional Distress; because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are sure such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

## Procedural Requirements

6. Plaintiff  WAITHE has filed suit with this Court within the applicable statute of limitations period.

7. Plaintiff WAITHE is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1866 of the Civil Rights Act of 1871.

8. On or about February 22, 2016, plaintiff WAITHE filed a Notice of Claim within ninety days of the alleged incident with the New York City Comptroller's Office.

9. On or about April 8, 2016, Plaintiff WAITHE appeared for the GML 50-H Hearing for an Examination Before Trial (EBT).

10. Plaintiff WAITHE alleges that during the adjustment period, the case was not settled.

## Plaintiff

11. Plaintiff WAITHE  is a male citizen over twenty-one (21) years of age and a resident of  Bronx County.

2

12. Plaintiff WAITHE was an employee of the defendant THE CITY OF NEW YORK (herein after referred to as the "CITY") more specifically the Police Department of the City of New York (herein after referred to as the "NYPD").

### Defendant

13. Defendant CITY was and is a municipal corporation organized and existed under and by the virtue of the law of the State of New York, and at all relevant times plaintiff's employer, with its central offices in the City of New York.

### Background

14. Plaintiff WAITHE is an African American male employee of the NYPD, who was a detective with over thirty (30) years of employment with the defendant City.

15. Plaintiff WAITHE alleges that the defendant CITY through its agents have a long history of discriminating against its African-American male police officers. And that he has witnessed white officers retain their employment even after arrest for serious criminal offenses and /or other infractions.

16.    That WAITHE joined the NYPD on or about January 21, 1985 as a police officer and was on the police force for approximately fourteen (14) years before he became involved with a class action lawsuit which was filed by the Latino Officers Association for discriminatory practices of the NYPD which subjected minority officers to disparate treatment and punishments for infractions from their white counterparts.

17. That WAITHE became involved with the discrimination lawsuit because in his time on the job (1985-1999) he had become aware of what was tantamount to a course of discriminatory conduct by white supervisors meted out stiffer punishments to Black and Latino officers, who routinely received excessive punishments in comparison to the

punishment(s) that their white counterparts received for the same or similar infraction(s).

and seemingly, universally throughout the NYPD meted out punishment to which was

disproportionate to the punishment meted out to white officers for the same offense or

infractions.

18. That early in his employment he observed that Black and Latino officers were

often subjected to excessive punishments, at greater rates than their white counterparts,

and in some instances they have been discharged for the same offenses when their white

counterparts were not.

19. That on or about[1] September 1999 a class action lawsuit was filed against

NYPD and WAITHE was a class member party to that lawsuit against the NYPD and on

or about September 2004 the lawsuit was settled and WAITHE as a member of the class

received a substantial settlement from NYPD.

20. Plaintiff alleges that defendant CITY through its agents and agencies have had

a long history of conducting flawed and/or inept investigations in those instances where

African-American police officer(s) complain, that there is a course of conduct on the part

of NYPD, to lodge false allegations against African-American officers and subject them

to demerits.

21. Plaintiff (hereinafter "WAITHE") is and was at all times material to this

action an employee of the New York City Police Department (hereinafter "NYPD") until

his discharge by the defendant BRATTON.

22. WAITHE had been employed as a police officer by NYPD and had been so

---

[1] LATINO OFFICERS ASSOCIATION CITY OF NEW YORK, et al., Plaintiffs, v. The CITY OF NEW YORK, et al., Defendants. 209 F.R.D. 79, S.D.N.Y. 2002).

employed for thirty (30) years until his termination from service on or about October 13, 2015.

23. Upon information and belief WAITHE started his career as a police officer and on or about 1990 he was appointed Detective 3d grade.

24. During his tenure with the NYPD and after his appointment as a Detective WAITHE was assigned to the OCCB a specialized unit of the NYPD.

25. As a member of OCCB amongst WAITHE's responsibilities were the training of other officers in day to day operations of the unit and law enforcement initiatives and directives.

26. On or about January 31, 2014  WAITHE was promoted to Detective First grade and the following month, February, he trained with the Emergency Service Unit in order to be certified as an emergency medical technician.

27. After WAITHE was promoted to Detective First grade he was required to take a drug/urine test as a condition of his employment/promotion.

28. On March 18, 2014 he reported to the Drug Screening Unit for a drug test purportedly based on his promotion to First Grade Detective and ten days later on March 28th a "random" drug test was administered.

29. During the March 18th drug screening the Drug Screening Unit examiner committed a number of errors and when the test results were obtained WAITHE had tested positive for marijuana.

30. The "random" test on March 28th he tested negative and that second sample was destroyed by police personnel in the Drug Screening Unit.

5

31. On or about March 30th members of the Internal Affairs Bureau stopped WAITHE and stripped him of his gun and badge pending Departmental charges.

32. Being aware of NYPD procedures, practices, and treatment of minority officers WAITHE went to an independent testing service on April 1st and it was determined at that time that time after testing his urine, hair and blood that the results were negative.

33. Being aware of NYPD procedures, practices, and treatment of minority officers WAITHE went to an independent testing service on April 4th and it was determined again; after testing his urine, hair and blood that the results were again negative.

34. That the March 28th results were inexplicably destroyed, after WAITHE was again required to submit himself for drug testing. And the NYPD has not provided a reason or explanation for their loss.

35. The NYPD Trials Bureau commenced hearings on or about March 24, 2015 and they continued until a determination was made against WAITHE.

36. In the hearing a witness for NYPD testified that WAITHE was a habitual user of marijuana which was contradicted by several drug screening test which WAITHE took which established the exact opposite.

37. Despite the preponderance of evidence the Deputy-Commissioner of trials found that WAITHE had tested positive on March 18th and disregarded the March 28th sample which was destroyed, and the April 1st and April 4th.

38. On or about October 9, 2015 defendant Commissioner William Bratton signed off on WAITHE's dismissal from the NYPD.

## COUNT I

## TITLE VII

39. Plaintiff re-alleges paragraph 1 through 36 and incorporates them by reference in Count I of this Complaint.

40. That WAITHE was involved in a civil suit against the New York City Police Department and was successful and he received an substantial award.

41. That the facts and circumstances of that lawsuit supported the contention that minority officers were mistreated and subjected to disparate treatment as a matter of course.

42. That their have been instances of retaliation against claimants who have been involved in discrimination lawsuits against NYPD and in some instances that retaliation has been immediate and in others the act(s) of retaliation have not been immediate.

43. That WAITHE was once a claimant against the NYPD and was successful in this claims against NYPD. And it is highly suspect that once he's promoted to Det,. First Grade there's an issue with a "drug" test, and after he questions it , and has three subsequent test that proved negative the NYPD chose to discharge him under those circumstances after they either lost or destroyed a subsequent test that they requested.

44. That the NYPD under the circumstances had overwhelming evidence that called into question the original test and that they either lost or destroyed a subsequent test that proved favorable, the inescapable conclusion is that their actions were motivated by something other than the facts.

45. That the NYPD has an institutional memory that goes back years and years

7

and that this "issue" provided the pretext and opportunity to retaliate against WAITHE

for his earlier litigation against the NYPD, and to prevent his ascension to one of the

higher pay grades in the NYPD.

46. That the NYPD has failed to provide a rational basis for WAITHE's

termination other than the fact that one drug test was positive and that three drug test

taken immediately after the first test all were negative.[2]

47. As a consequence of the actions of the defendants, WAITHE has suffered

damages in an amount to be determined.


## COUNT II

### Racial Discrimination
### In Violation of
### The Civil Rights Act Of 1866, 42 U.S.C. 1981


48. Plaintiff re-alleges paragraph 1 through 47 and incorporates them by reference

in Count I of this Complaint.

49. Plaintiff alleges that by the aforesaid discriminatory acts and omission of

employees of defendant CITY and defendant Bratton (hereinafter "Bratton") acting

individually and in their official capacities as public officials of defendant CITY inferred

with his right to enforce contracts under the color of state law because of his race.

50. Plaintiff alleges that pursuant to their conduct, employees of defendant CITY

acted to deprive him of his civil rights, by repeated acts of negligence and departure from

procedure which was indicative of bad faith and incompetence.

---

[2] The NYPD either lost or destroyed another test they administered which was negative.

51. WAITHE contends that the March 18th test was invalid, and that NYPD destroyed the March 28th test and that the two test he took: April 1st, April 4th conclusively proved he was not a "habitual" user.

52. The defendant Bratton disregarded the preponderance of the evidence and dismissed WAITHE based upon improper testing and record keeping and displaying a total disregard of evidence which contradicted the erroneous findings of March 18th.

53. That if WAITHE was a habitual user the time frame between test(s) would have militated against a negative finding and that a positive finding would have been more consistent with that of an habitual user. WAITHE denies any usage.

54. Based upon the failure of the defendant City and defendant Bratton to adequately investigate these allegations, coupled with the intentional or negligent destruction of test samples and a total disregard of independent testing agencies (not contracted by NYPD) WAITHE was deprived of his constitutional rights to due process.

55. As a consequence of the actions of the defendants, WAITHE has suffered damages in an amount to be determined.

### Count III

### Wrongful Termination Based Upon Racial Discrimination In Violation Of The Civil Rights Act Of 1871, 42 U.S.C 1983

56. Plaintiff re-alleges paragraph 1 through 55 and incorporates them by reference in Count II of this Complaint.

57. Plaintiff alleges that defendant CITY under color of law, personally interfered with and deprived him of his constitutional rights.

58. Plaintiff alleges that defendant City's employees acting individually and in

9

their official capacities as public officials and defendant Bratton under the color of law, and after having been fully advised that WAITHE was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivation of his rights.

59. That the trial department record did not support a legal conclusion that WAITHE had violated NYPD procedure by a preponderance of the evidence.

60. That the defendant CITY failed to follow proper procedure in obtaining hair and urine samples from WAITHE and negligently or intentionally destroyed the samples taken on March 28th and the examiner was inexperienced at the time of the collection of the samples and made numerous mistakes during the processing of WAITHE's samples.

61. That the defendants' totally disregarded the preponderance of the evidence and based upon an impermissible criteria WAITHE was dismissed from the defendant City by defendant Bratton.

62. Upon information and belief the March 28th results were negative for the presence of drugs/marijuana and on that date he was supposed to be given a hair drug test the collector changed that to a urine test, because WAITHE's hair was to short, although collector did not check all the available parts of the body for air.

63. Moreover the collector also mistakenly filed the test as a random drug screening when it was supposed to be a promotional screening. There were a series of mistakes and destruction of evidence by NYPD which was totally disregarded by the trial hearing judge, defendant City and defendant Bratton.

64. As a consequence of the actions of the defendants, WAITHE has suffered

10

emotional distress, monetary damage, legal expenses, and out of pocket expenses for

telephone, postage and other costs of pursuing the claims herein and damages in an

amount to be determined.

### Count IV

### Abuse Of Authority
### In Violation Of
### The Civil Rights Act Of 1871, 42 U.S.C 1983

65. Plaintiff re-alleges paragraph 1 through 64 and incorporates them by reference

in Count II of this Complaint.

66. Plaintiff alleges that defendant CITY under color of law, personally interfered

with and deprived him of his constitutional rights.

67. Plaintiff alleges that defendant CITY and its employees acting individually

and in their official capacities as  public official of defendant CITY under color of law,

and defendant Bratton having been fully advised that he was being deprived of his

constitutional rights , either acted in a concerted, malicious intentional pattern to further

violate his civil rights, or knowing such discrimination was taking place, knowingly

omitted to act to protect him from continuing deprivations of his rights.

68. That the collector of the March 18th sample mistakenly transcribed the I.D.

number on the sample; that the collector had to prepare an affidavit attesting to this error

and that affidavit itself contained and error; that the positive result was reported on the

same day WAITHE appeared for another hair test, which collector changed to a urine test;

that the second drug test was negative for the presence of drugs; that the collector of the

March 18th test was new, inexperienced, brief job training period, but principally trained

11

via the Internet.

69. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an amount to be determined.

### Count V

### Improper Training In Violation Of The
### Civil Rights Act Of 1871, 42 U.S.C. § 1983

70. Plaintiff re-alleges paragraph 1 through 69 and incorporates them by reference in Count IV of this Complaint.

71. The collector of the samples had been on the job for only six months, and had received on the job training for couple of weeks and the bulk and balance of her training was by the internet and at the time(s) involved in this action was working alone without supervision.

72. That the collector failed to follow proper police procedure in taking WAITHE's samples and the contract agency returned paperwork which was incorrectly completed and was required to submit an affidavit to explain the discrepancy.

73. Upon information and belief the affidavit which was submitted by the collector also contained errors which similarly had to be corrected. And WAITHE's March 28th sample was negative but was destroyed, inexplicably.

74. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an

amount to be

determined.

## Count VI

### Improper Discipline In Violation
### Of The
### Civil Rights Act Of 1871, 42 U.S.C. § 1983

75. Plaintiff re-alleges paragraph 1 through 74 and incorporates them by reference in Count V of this Complaint.

76. That WAITHE had a distinguished NYPD career, coupled with military service leave during his employ; and his EMT training was for the sole purpose of being able to provide immediate medical assistance if a fellow officer were ever injured executing search warrants or comparable situations where a member of the service might require immediate medical assistance.

77. That the preponderance of the evidence at the Trial board hearing was in his favor and that the defendants' arbitrarily and capriciously discounted, and disregarded substantial evidence which countered the charges against WAITHE.

78. That white police officers have committed much more egregious acts and conduct and have not lost their jobs. WAITHE had taken numerous drug test in his 30 years of service and the March 18th test results were an anomaly.

79. That numerous superior officers attested to his character, and he was promoted based upon his exemplary record of performance over the course of thirty years.

80. That WAITHE had never been subjected to any adverse job actions over thirty years and that the actions of the defendants' were in violation of police practice and procedures and he was denied substantive and procedural due process when he was

13

terminated by the defendants.

81. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an amount to be determined.

## Count VII

### Racial Discrimination In Violation
### Of New York City  Administrative Code § 8-107

82. Plaintiff re-alleges paragraph 1 through 81 and incorporates them by reference in Count VI of this Complaint.

83. WAITHE alleges that New York City Administrative Code § 8-107, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

84. WAITHE alleges that defendants' City and Bratton discriminated against him because of his race in determining his fitness to serve.

85. WAITHE alleges that as a direct and proximate result of the unlawful employment practices of defendants' City and Bratton, he suffered the indignity of racial discrimination and great humiliation.

86. WAITHE alleges that defendants' City and Bratton's violations caused him mental anguish, emotional distress, and loss of employment opportunities.

87. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an

amount to be determined.

## Count VIII

### Racial Discrimination In Violation
### Of New York Exec. Law § 296

88. Plaintiff re-alleges paragraph 1 through 87 and incorporates them by reference in Count VII of this Complaint.

89. That the NYPD has had a history of discrimination against its minority employees and minority members of the public.

90. That the facts and circumstances surrounding the "drug testing" procedures has called into question the severity of the punishment against WAITHE and the flimsy documentation and testing procedures against the overwhelming evidence that WAITHE has repeatedly tested negative for drug usage.

91. That the credible evidence greatly outweighs any evidence that the NYPD relied upon in terminating WAITHE and that viewed from that perspective it is consistent with disparate treatment of minority officers and in fact is consistent with retaliation for WAITHE's activist conduct from so many years ago.

92. That the preponderance of the credible evidence establishes that NYPD was motivated by something other than a failed drug test and that white officers similarly situated would never have been terminated given the weight of the evidence against WAITHE's drug usage.

93. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an

15

amount to be determined.

**Count IX**

**<u>Negligent Hiring</u>**

94. Plaintiff re-alleges paragraph 1 through 93 and incorporates them by reference in Count VII of this Complaint.

95. WAITHE alleges that the collector, member of NYPD employed by the defendant City and defendant Bratton lacked the basic skills necessary to do the job they were hired to perform and was incapable to accurately performing the task assigned to them.

96. That on several occasions the collector, member of NYPD who was employed by the defendant City and Bratton failed to follow basic protocol and received the bulk of their training via the internet and that there were no proficiency test or periodic skill assessments to determine their continued/on going qualifications.

97. Upon information and belief at the time of the March 18th testing there was no supervisor present, and no one reviewed the test which were performed or the documents which were generated as a result of the test.

98. Upon information and belief the collector failed to follow instructions with regard to the second test on March 28th and that after the test the results and samples were inadvertently destroyed.

99. WAITHE alleges that defendant City and Bratton had knowledge of these facts which would have cause a reasonably prudent person to investigate the proficiency of the collector in view of the major shortfalls and the likelihood that such ineptitude would likely result in injury to others.

16

100. WAITHE contends that defendants' City and Bratton failed to use reasonable care to correct or remove the collector who had failed to comply with the rules and regulations repeatedly.

101. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an amount to be determined.

### Count X

### Negligent Supervision

102. Plaintiff re-alleges paragraph 1 through 101 and incorporates them by reference in Count VIII of this Complaint.

103. Upon information and belief the defendants City and Bratton failed to have a supervisor on duty or on call when WAITHE provided his sample.

104. Upon information and belief the NYPD collector made numerous mistakes in the processing of the samples, specific request and paper work that was required to be completed with specificity.

105. That at the time of the collection of WAITHE's sample numerous concerns were expressed by WAITHE that the collector disregarded a request by WAITHE's command and unilaterally took a urine test as compared to a hair test in the March 28th sample.

106. That the March 28th sample was mysteriously lost by NYPD after he questioned the efficacy of the testing process.

107. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an amount to be determined.

### Count XI

### Intentional Infliction Of Emotional Distress

108. Plaintiff re-alleges paragraph 1 through 107 and incorporates them by reference in Count V of this Complaint.

109. That WAITHE had extensive experience with OCCB and had worked in narcotics units, during his tenure with NYPD.

110. That WAITHE was highly regarded by his co-workers and supervisors as was evinced by his promotion to Detective First Grade Detective.

111. That at the time WAITHE was terminated he was receiving EMT training to better equip himself to perform this job as a member of NYPD, in order to be a first responder, if any members of service were injured during police operations.

112. That the defendants' City and Bratton were aware of or intentionally disregarded the substantial probability that their actions or the actions of their agents were likely to cause sever emotional distress to WAITHE.

113. That WAITHE had taken, and successfully pasted 3 out of 4 drug test; and that as to the failed test, their were substantial irregularities; and all subsequent test, were negative.

114. Plaintiff alleges that defendants' City and Bratton by their extreme, callous

and outrageous conduct, intended to cause CW embarrassment, public humiliation, degradation, of his esteem, and character causing him to suffer emotional and psychological injuries.

115. As a consequence of the actions of the defendants, WAITHE has suffered emotional distress, monetary damage, legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein and damages in an amount to be determined.

## Jury Trial

116. Plaintiff demands a trial by jury of all issues in this action that are so triable.

## Prayer For Relief

Wherefore, plaintiff demands compensatory and punitive damages against the defendant City and Bratton jointly and severally, plus any and all available statutory remedies, both legal and equitable, interests and costs.

Dated: January 27, 2017

Respectfully submitted,

William T. Martin, Esq.(WTM 4005)
108 Village Square, Suite 143
Somers, N.Y. 10589
866-557-2275 - Office
718-504-3783 - Fax
wtmartin380@gmail.com