UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

CECIL WAITHE,

                         Plaintiff,

                -v-

THE CITY OF NEW YORK, WILLIAM A.
BRATTON, as NYPD POLICE
COMMISSIONER, being sued individually and
in his capacity as employee of defendant THE
CITY OF NEW YORK,

                         Defendants.

------------------------------------------------------------------- X

16-cv-5510 (KBF)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 21, 2017

KATHERINE B. FORREST, District Judge:

      On July 11, 2016, former New York Police Department ("NYPD") Detective Cecil Waithe ("plaintiff" or "Waithe") commenced this action against the City of New York and former NYPD Commissioner William Bratton ("Commissioner Bratton") (collectively, "defendants"). (ECF No. 1.) Plaintiff filed an amended complaint on January 27, 2017. (ECF No. 28.) Before the Court is defendants' motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b) ("Rule 12(b)"). (ECF No. 36.)

      For the reasons discussed below, the Court hereby GRANTS defendants' motion to dismiss in its entirety.

I.  BACKGROUND

The factual allegations below are derived from plaintiff's amended complaint (ECF No. 28), and are presumed true for purposes of this motion.[1]

On January 21, 1985, Cecile Waithe joined the NYPD as a police officer in the Organized Crime Control Bureau ("OCCB"). (Amend. Compl. ¶¶ 16, 24, ECF No. 28.) In that role, Waithe was responsible for "training [] other officers in day to day operations of the unit and law enforcement initiatives and directives." (Id. ¶ 25.) Waithe was promoted to Detective Third Grade in 1990, and remained assigned to the OCCB. (Id. ¶¶ 23-24.)

In or around September 1999, Waithe was party to a class-action lawsuit that accused the NYPD of discrimination and disparate treatment of minority officers. (Id. ¶¶ 16, 19.) Waithe became involved with the lawsuit because he "had become aware of . . . a course of discriminatory conduct by white supervisors" within NYPD. (Id. ¶ 17.) The lawsuit settled on or around September 2004, and Waithe "received a substantial settlement from NYPD" as a result. (Id. ¶ 19.)

On or around January 31, 2014, Waithe was promoted to Detective First Grade. (Id. ¶ 26.) As a condition of his promotion, Waithe was required to take a drug test on March 18, 2014. (Id. ¶¶ 27-28.) That test, which was administered by

---

[1] The Court has not considered the two exhibits attached to defendants' memorandum of law in connection with its decision on this motion. (ECF No. 38.) Although the Second Circuit has held that courts may consider certain documents other than the complaint, including, inter alia, (1) documents incorporated into the complaint by reference and (2) documents that are "integral" to the complaint, the Court concludes that the defendants' exhibits do not qualify for consideration under the relevant legal standard. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

the NYPD Drug Screening Unit ("DSU"), returned a positive result for marijuana. (Id. ¶ 29.) The DSU subsequently administered a second, "random" drug test on March 28, 2014. (Id. ¶ 28.) That test came back negative, and Waithe alleges that the results were "inexplicably destroyed." (Id. ¶¶ 30, 34.) Waithe also hired an independent drug testing service to test his "urine, hair and blood" on April 1 and April 4, 2014. (Id. ¶¶ 32, 33.) Both of those tests came back negative as well. (Id.)

Because of his positive drug test, the NYPD brought departmental charges against Waithe on or around March 30, 2014. (Id. ¶ 31.) The NYPD Trials Bureau commenced formal disciplinary proceedings ("the NYPD proceedings") on or around March 24, 2015. (Id. ¶ 31.) During those proceedings, Waithe presented evidence of the three negative drug tests that he took on March 28, April 1, and April 4, all of which came back negative. (Id. ¶¶ 30, 32-33, 36-37.)

According to Waithe, the "trial department record did not support a legal conclusion that [he] had violated NYPD procedure by a preponderance of the evidence." (Id. ¶¶ 37, 59; see also id. ¶¶ 52, 61, 77.) Nonetheless, at the conclusion of the NYPD proceedings, the Deputy Commissioner of Trials concluded that Waithe tested positive for marijuana on March 18, 2014. (Id. ¶¶ 37.) Based on that finding, Commissioner Bratton issued an order of dismissal terminating Waithe's employment on or around October 9, 2015. (Id. ¶ 38.)

Waithe initiated the present action on July 11, 2016, bringing a total of nine claims against defendants under 42 U.S.C. §§ 1981 and 1983, the New York City Administrative Code ("NYCHRL") § 8-107, and common law. (See generally ECF

3

No. 1.) Waithe amended his complaint on January 27, 2017, adding two additional claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the New York State Human Rights Executive Law ("NYSHRL") § 296. (Amend. Compl. ¶¶ 39-47, 88-93.) Waithe's amended complaint alleges, in sum, that (1) the March 18, 2014 drug test was administered improperly, and therefore the positive result was invalid (Id. ¶¶ 29, 51, 60, 68, 71-73, 95-97); (2) defendants disregarded the "preponderance of the evidence" presented during the NYPD proceedings and erroneously decided to terminate his employment (Id. ¶¶ 52-54, 61, 77, 80, 91-92); and (3) defendants used the positive drug test as pretext to retaliate against Waithe because of his race and/or prior involvement with a lawsuit against the NYPD. (Id. ¶¶ 43-46, 78, 84, 90-92.)

II. LEGAL PRINCIPLES

    a. Motion to Dismiss

At the motion to dismiss stage, a court must construe the complaint liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001), as amended (Apr. 20, 2001). A complaint survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." Id. The complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are merely consistent with a defendant's liability." Id. (internal quotation marks omitted). Application of this standard is "context-specific," and requires the reviewing court to "draw on its judicial experience and common sense." Id. at 679. The Court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (internal quotation omitted).

      b. Administrative Exhaustion

Title VII of the Civil Rights Act of 1964 ("Title VII") contains a complex series of requirements for filing discrimination claims before the Equal Employment Opportunity Commission ("EEOC") or equivalent state or local agency. See 42 U.S.C. § 2000e–5(b)–(f). The Second Circuit has held that "exhaustion of administrative remedies through the EEOC . . . [is] an essential element of Title VII's statutory scheme," and therefore is a "precondition to bringing a Title VII claim in federal court." Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotations and citations omitted); see also Leonine v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001) ("Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."). Although administrative exhaustion is not a strict jurisdictional bar, it is a waivable precondition "with which defendants are entitled to insist that plaintiffs comply." Francis, 235 F.3d at 768. This Court may consider an exhaustion defense on Rule

5

12(b) motion to dismiss. See generally Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003).

    c. Collateral Estoppel

The doctrine of collateral estoppel, also known as "issue preclusion," "prevents a party from relitigating an issue of fact or law that has been decided in an earlier suit." Wilder v. Thomas, 854 F.2d 605, 616 (2d Cir. 1988); see also Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (citation omitted). The doctrine "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, . . . prevent[s] inconsistent decisions, encourage[s] reliance on adjudication," and "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." Allen, 449 U.S. at 94 (citation omitted). "A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014).

The Full Faith and Credit Act, 28 U.S.C. § 1738, does not apply to "unreviewed state administrative factfinding." See Univ. of Tenn. v. Elliott, 478 U.S. 788, 794 (1986). That said, the Supreme Court has "frequently fashioned federal common-law rules of preclusion in the absence of a governing statute." Id.

(citations omitted). Accordingly, the Supreme Court has held that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. at 799 (internal citation and quotations omitted); see also Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 45 (2d Cir. 2014) ("State law governs the preclusive effects in federal court of a state administrative agency's quasi-judicial findings."). "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist., 411 F.3d 306, 310 (2d Cir.), cert. denied, 546 U.S. 1062 (2005).

Under New York law, collateral estoppel bars subsequent litigation of an issue when: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."[2] Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." Id. (citation omitted).

---

[2] A "full and fair opportunity to litigate" is therefore a precondition to both: (1) initial application of preclusion principles to the quasi-judicial agency's factfinding; and (2) actual preclusion of the previously-decided issue. For practical purposes, the analysis for both inquiries collapses into one.

7

### d. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(a), "In any civil action of which the [federal] district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims . . . [that] form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); In re Merrill Lynch Ltd. Partnerships Litig., 154 F.3d 56, 61 (2d Cir. 1998).

## III. DISCUSSION

For purposes of this decision, Waithe's claims are separated into three groups: (1) the Title VII claim (Count I); (2) the civil rights claims under federal, state, and local law (Counts II-VIII); and (3) the common law tort claims (Counts IX-XI). Each group will be discussed in turn.

a. The Title VII Claim (Count I)

1. Failure to Exhaust

Count I of plaintiff's complaint alleges retaliation in violation of Title VII. (Amend. Compl. § 39-47.) As previously noted, the Second Circuit has held that exhaustion of administrative remedies through EEOC proceedings is a prerequisite to bringing a Title VII claim in federal court. See, e.g., Francis, 235 F.3d at 768. Although that precondition is waivable, the defendants to this action have not done so, having raised lack of exhaustion in their motion to dismiss. (ECF No. 36.)

Plaintiff's complaint does not allege that he has properly exhausted his administrative remedies by presenting the instant Title VII claim to the EEOC or some equivalent state or local agency. Nor does plaintiff allege that he has exhausted any "reasonably related" claims. See Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (quotation omitted). Accordingly, the Court concludes that plaintiff has not properly exhausted his administrative remedies under Title VII, and therefore plaintiff's Title VII claim must be DISMISSED.

2. Failure to State a Claim

Alternatively, the Court concludes that plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6). "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) []he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging h[im]; and (3) there exists

9

a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004).

Waithe's Title VII claim alleges that he was terminated because he participated in a class-action lawsuit against the NYPD in 1999. (Amend. Compl. ¶¶ 39-47.) But the factual allegations in Waithe's complaint do not support a reasonable inference that those two events are "causal[ly] connect[ed]." See Patane, 508 F.3d at 115 (citation omitted). Waithe alleges that "the[re] have been instances of retaliations against claimants who have been involved in discrimination lawsuits against NYPD," and that "the NYPD has an institutional memory that goes back years and years." (Amend. Compl. ¶¶ 42, 45.) Those generalized assertions, standing alone, do not tend to show that the NYPD decided to retaliate against Waithe in this specific instance. In fact, the allegations in the complaint, taken as a whole, tend to contradict Waithe's claim since: (1) the lawsuit settled in September 2004 (Id. ¶ 19); (2) Waithe remained employed by the NYPD for approximately ten years afterwards (Id. ¶ 38); and (3) Waithe was promoted to Detective First Grade after his involvement with the lawsuit (Id. ¶ 26.)

Because Waithe's Title VII claim does not state a claim that is plausible on its face, it must be DISMISSED.

b. The Civil Rights Claims (Counts II-VIII)

Counts II-VIII of plaintiff's complaint broadly allege racial discrimination, abuse of authority, improper training, and improper discipline in violation of

10

plaintiff's civil rights under 42 U.S.C. §§ 1981 and 1983, NYCHRL § 8-107, and NYSHRL § 296. (Id. ¶¶ 48-93.) Although plaintiff's civil rights claims are not a model of clarity, they all rest on the same basic factual allegations: (1) that the March 18, 2014 drug test was administered improperly, and therefore the positive result was invalid (Id. ¶¶ 29, 51, 60, 68, 71-73, 95-97); (2) defendants disregarded the "preponderance of the evidence" presented during the NYPD proceedings and erroneously decided to terminate his employment (Id. ¶¶ 52-54, 61, 77, 80, 91-92); and (3) defendants used the invalid, positive drug test as pretext to retaliate against Waithe because of his race. (Id. ¶¶ 43-46, 78, 84, 90-92.)

1. Collateral Estoppel

As an initial matter, the Court concludes that plaintiff's civil rights claims are barred by collateral estoppel. As previously noted, "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." Burkybile, 411 F.3d at 310. Additionally, in order to preclude subsequent federal litigation, the identical issue must necessarily have been decided in the prior action, and must be "decisive of the present action." See Evans, 469 F.3d at 281. The "party attempting to defeat . . . application [of collateral estoppel] has the burden of establishing the absence of a full and fair opportunity to litigate the issue." Evans, 469 F.3d at 281.

The relevant fact here is the validity of the March 18th drug test, which serves as a legitimate, non-pretextual reason for plaintiff's termination. If the drug test was indeed valid, it is fatal to plaintiff's civil rights claims, which rest on his

11

core allegation that the test was an illegitimate, pretextual excuse for defendants' racial discrimination. As reflected in the complaint, plaintiff already litigated the validity of the March 18, 2014 drug test during the NYPD proceedings. During those proceedings, Waithe presented evidence of subsequent negative drug tests (Id. ¶¶ 30, 32-33, 36-37) and character testimony from NYPD colleagues (Id. ¶ 79). Indeed, the complaint alleges that the NYPD Trials Bureau had "overwhelming evidence" before it that "called into question the original test." (Id. ¶ 44.) Despite that "preponderance of evidence at the Trial board hearing," the Deputy-Commissioner of trials nonetheless found that "Waithe had tested positive on March 18th." (Id. ¶¶ 37, 77.)

Plaintiff's complaint does not include any allegations tending to suggest that he did not have a full and fair opportunity to litigate the validity of the March 18th drug test. Indeed, while the complaint includes numerous allegations that the tests were administered improperly and that the NYPD was engaged in some sort of conspiracy to terminate Waithe because of his race (Id. ¶¶ 29-30, 37, 43-44, 50-54, 59-63, 68, 71-73, 77-80, 84, 89-92), those allegations are nothing more than a collateral attack on the conclusion of the NYPD proceedings, not the process itself.

Because the validity of the March 18, 2014 drug test was necessarily decided in the NYPD proceedings, is decisive of plaintiff's civil rights claims, and because plaintiff has not plead facts suggesting that he did not have a full and fair opportunity to litigate the issue, plaintiff's civil rights claims are hereby DISMISSED.

12

2. Failure to State a Claim

Alternatively, the Court concludes that plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6). To state a claim for race-based discrimination under the applicable statutes, plaintiff must allege facts tending to provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." See Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (applying standard to disparate treatment claims under Title VII, § 1981, and § 1983); see also Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296, and the Administrative Code of the City of New York."). Plaintiff has failed to do so here.

The principal allegations in support of plaintiff's civil rights claims are that: (1) defendants "have a long history of discriminating against . . . African-American male police officers" (Amend. Compl. ¶¶ 15, 89); (2) defendants routinely punish minority officers more severely than white officers (Id. ¶¶ 16-18, 41, 78, 91, 92); (3) defendants have, in the past, retaliated against officers involved in discrimination lawsuits against NYPD (Id. ¶ 42); and (4) defendants have "a long history of . . . lodg[ing] false allegations against African-American officers." (Id. ¶¶ 16-18.) But none of those generalized allegations support a reasonable inference that the NYPD's decision to terminate Waithe in this particular instance was motivated by discriminatory intent.

Furthermore, Waithe's allegations that the March 18, 2014 drug test was administered improperly, that the preponderance of the evidence established his innocence, and that "the inescapable conclusion is that [defendants'] actions were motivated by something other than the facts" do not support his claims for race-based discrimination. (Id. ¶ 44.) Even assuming that plaintiff's allegations are true, and that the NYPD did have some ulterior motive to terminate Waithe, he still must allege some facts tending to show that the ulterior motive was discriminatory. All Waithe has properly alleged is that the NYPD disciplinary process is faulty, not that his civil rights were violated. The complaint might suggest "a sheer possibility" that defendants discriminated against plaintiff, but Rule 12(b)(6) demands more. See Iqbal, 556 U.S. 662, 678.

Because Waithe's civil rights claims are not plausible on their face, they must also be DISMISSED.

   c. The Tort Claims (Counts IX-XI)

By operation of this order, the Court has dismissed all of Waithe's federal claims under Title VII and 42 U.S.C. §§ 1981 and 1983. The Court lacks original jurisdiction over the remaining claims in this action (alleging negligent hiring, negligent supervision, and intentional infliction of emotional distress), which are based in the common law of torts. Having dismissed all of the claims granting original jurisdiction, the Court declines to exercise jurisdiction over Waithe's common law tort claims. See 28 U.S.C. § 1367(c)(3) (providing that a district court

14

"may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction.").

IV. CONCLUSION

For the reasons stated above, the Court hereby GRANTS defendants' motion to dismiss at ECF No. 36 in its entirety. Plaintiff's amended complaint at ECF No. 28 is DISMISSED.

The Clerk of Court is directed to terminate this action.

SO ORDERED.

Dated:    New York, New York
          September 21, 2017

_____
KATHERINE B. FORREST
United States District Judge